# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 11, 2015 Session

## STATE OF TENNESSEE v. WILLIAM GARY MOSLEY

### Direct Appeal from the Circuit Court for Marion County
### No. 9779B    Thomas W. Graham, Judge

---

### No. M2014-02533-CCA-R3-CD – Filed January 26, 2016

---

The appellant, William Gary Mosley, pled guilty in the Marion County Circuit Court to initiation of a process intended to result in the manufacture of methamphetamine, a Class B felony, and two counts of possession of drug paraphernalia, a Class A misdemeanor, and reserved a certified question of law concerning the sufficiency of the affidavit underlying the search warrant issued in this case. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the affidavit failed to establish probable cause for the search warrant. Therefore, the judgment of the trial court is reversed, the appellant's convictions are vacated, and the charges are dismissed.

### Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court are Reversed and Vacated.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

M. Keith Davis, Dunlap, Tennessee, for the appellant, William Gary Mosley.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; J. Michael Taylor, District Attorney General; and David McGovern, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

This case relates to a search of the appellant's home on March 12, 2014. Earlier that day, Detective Matt Blansett of the Marion County Sheriff's Department (MCSD)

submitted an affidavit in which he listed the following as the "factual basis supporting probable cause" for issuance of a search warrant for the residence:

> 1. The affiant received information from Christopher Lee Trussell that he has been buying pseudoephedrine pills and taking them to William Gary Mosley at 406 Elm. Ave in South Pittsburg, Tn.
>
> 2. Trussell states that he has taken Mosley pills on several times for Mosley to use to manufacture methamphetamine.
>
> 3. Trussell would take Mosley the Pills in exchange for methamphetamine or Mosley would pay Trussell $75.00 to $100.00 [for] each box of pills. If Trussell wanted money instead of methamphetamine Mosley would make him wait until he was finish with the cook to pay him.
>
> 4. Trussell states that Mosley starts the cook inside of the residence and then finishes the process in the out building.
>
> 5. Trussell states the Mosley leaves tubbing [sic] and other item under the out building and also keep mason jars and other items inside the bedroom in the mobile home;
>
> 6. Detectives have verified the purchases Trussell made through the National Precursor log exchange database. Showing that the information that Trussell is giving is true and correct.
>
> 7. It is anticipated through the corporation of Chris Trussell law enforcement has arranged for Trussell to make a controlled delivery of pseudoephedrine pills a precursor ingredient to Mosley at his residence at 406 Elm Ave. Officers will have constant surveillance of Chris Trussell to and from the residence.
>
> 8. As soon as Trussell leaves the residence officers will verify that no one has left the residence other than Trussell at that time officers will secure the residence and the search will take place.

Based on the information contained in the affidavit, Judge Mark Raines granted Detective Blansett's request for a search warrant.

During the search of the appellant's home, officers found various materials and equipment used in the manufacture of methamphetamine. In June 2014, the Marion County Grand Jury indicted the appellant and his girlfriend for initiating a process intended to result in the manufacture of methamphetamine, promotion of the manufacture of methamphetamine, two counts of possession of one-half gram or more of methamphetamine within a drug-free school zone, and two counts of aggravated child abuse or neglect under "Haley's law."

The appellant filed a motion to suppress all the evidence on the basis that Detective Blansett's affidavit failed to establish probable cause for the warrant. In support of his motion, the appellant alleged that officers never conducted controlled buys from the residence prior to applying for the warrant; did not conduct any surveillance of the home prior to applying for the warrant; misled the issuing judge in that Trussell's most recent purchase of pseudoephdrine had occurred on February 5, 2014, several weeks before Detective Blansett applied for the warrant; and never checked the National Precursor Log Exchange prior to applying for the warrant to determine if the appellant had purchased pseudoephdrine. The appellant also alleged that officers had never used Trussell as an informant prior to this case, had "little" information about him, and failed to corroborate the information he provided prior to obtaining the warrant.

At the suppression hearing, Detective Blansett testified that he had been employed by the MCSD for eleven years and had investigated more than one hundred methamphetamine laboratories. He stated that he had taken a forty-hour certification class on methamphetamine labs and that he was recertified every year. Detective Blansett said methamphetamine "cooks" often did not want their names on the pseudoephedrine registry. Therefore, they had "buyers" purchase the pseudoephedrine pills for them and gave the buyers the finished product in exchange for the pills. If the buyers preferred money, the cooks paid them $50 to $70 for a box of pseudoephedrine.

Detective Blansett testified that he learned about the appellant from Detective Nathan Billingsley and "was advised an anticipatory search warrant would be the best way to handle the situation." The trial court asked why the police needed to obtain the search warrant prior to the actual drug transaction between Trussell and the appellant, and Detective Blansett answered, "Just the other investigators I'd spoken to with the TBI and also other investigators at the sheriff's department advised that [an] anticipatory search warrant using him in the role as a witness and delivering pseudoephedrine would be the best way to write the warrant." After Detective Blansett obtained the search warrant, he searched Trussell and Trussell's vehicle at a boat dock in South Pittsburg. Detective

Blansett then gave psuedoephedrine pills to Trussell, and Trussell went to the appellant's home.

Detective Blansett testified that Trussell entered the residence and traded the pills for a small bag of methamphetamine. Trussell came out of the appellant's home, and Detective Blansett spoke with Trussell on the telephone. Trussell advised Detective Blansett that "the deal went down and he had a small bag of meth." At that point, Detective Blansett executed the search warrant. Meanwhile, Trussell returned to the boat dock, and another detective retrieved the methamphetamine from him. Detective Blansett said that he had not seen the bag of methamphetamine and that Trussell had not yet turned over the bag of methamphetamine when officers entered the appellant's home to execute the warrant.

On cross-examination, Detective Blansett testified that he had never met or even heard of Trussell prior to this case. He acknowledged that he did not perform a background check on Trussell prior to obtaining the search warrant and that a background check would have revealed that Trussell pled guilty to a "methamphetamine charge" on March 5, 2014. Detective Blansett also acknowledged that he did not check the pseudoephedrine database for the name of the appellant or the appellant's girlfriend. Detective Blansett checked the database for Trussell's name and learned that Trussell had purchased seven boxes of pseudoephedrine since May 4, 2011. However, Detective Blansett did not include that information in his affidavit. He acknowledged that pseudoephedrine was a legal product, that a person could buy it without a prescription, and that the purchase of the psuedoephedrine alone did not create probable cause.

Detective Blansett testified that no one ever mentioned Trussell's reliability to him, and he acknowledged that the only evidence he had that the appellant was manufacturing methamphetamine was the information provided by Trussell. Regarding his corroboration of Trussell's information, he stated, "After we executed the search warrant, yes, we corroborated it." However, he did not corroborate any of the information prior to obtaining the warrant. Detective Blansett had not conducted any surveillance of the appellant's home and had not conducted any undercover buys from the appellant prior to obtaining the warrant, and Trussell did not wear a wire into the home. Detective Blansett acknowledged that by the time Trussell got from the appellant's house to the boat dock, officers had already entered the appellant's residence. He said, though, that prior to the entry, he confirmed in a telephone conversation with Trussell that Trussell had obtained methamphetamine. At the time of the suppression hearing, the material obtained by Trussell had not yet been confirmed as methamphetamine.

During redirect examination, the trial court commented, "I'm not sure why there was any need for super speed here. This is where [the appellant] lives. He's not, -- I assume he's been there a long time. It's not like it's a mobile home or some transient place[.]" Detective Blansett responded, "The way it was explained to me was the reason you do it like this was to assure that you get the product that you delivered into the house back before it's [disposed] of." Detective Blansett acknowledged that during the search, the police obtained the pseudoephedrine that Trussell had delivered.

Officer Nathan Billingsley of the South Pittsburg Police Department testified that Trussell went to Officer Billingsley's "chief" with information about the appellant's manufacturing methamphetamine at the appellant's residence. Trussell had been convicted of a drug charge about a week earlier, and the police did not have an agreement with him in exchange for his information about the appellant. Officer Billingsley said that he knew Trussell's father and "knew of" Trussell and that he thought Trussell was reliable because "[b]asically just talking to him when he came by the police department. I mean, the information he was giving me seemed to be pretty reliable." Officer Billingsley did not check Trussell for outstanding warrants or a criminal history. Trussell showed Officer Billingsley some text messages between Trussell and the appellant about "prior encounters between the two of them." The messages referred to "building a house," which Trussell claimed was a code he and the appellant used when the appellant "needed some product to cook methamphetamine."

The trial court asked Detective Billingsley why he did not apply for the search warrant himself, and Detective Billingsley testified, "I had never done a search warrant before and Detective Blansett was the one that was going to help me with the search warrant." After Detective Blansett obtained the warrant, Detective Billingsley and Detective Blansett watched Trussell enter and leave the appellant's residence. Detective Billingsley also was present when Trussell advised Detective Blansett that "he did have the product." Trussell got into his truck and drove away, and another officer followed Trussell back to the boat dock.

On cross-examination, Detective Billingsley acknowledged that he had been working in law enforcement about twelve years. Two or three days before the search warrant was issued, Detective Billingsley had a "long" interview with Trussell. However, after the interview, the police did not conduct surveillance on the appellant's home or check the pseudoephedrine database for the appellant's name. Detective Blansett also met with Trussell a day or two before the warrant was issued. Thus, Detective Blansett received the information directly from Trussell and typed the search warrant.

At the conclusion of the hearing, the trial court requested that the parties "brief" whether Trussell was a citizen informant or a criminal informant because "criminals are

inherently not reliable." The trial court also requested that the parties address whether the affidavit contained a "triggering event" that established probable cause to issue the anticipatory warrant.

In the appellant's post-hearing memorandum of law, he argued that Trussell was a criminal informant and, therefore, that the affidavit used to obtain the search warrant had to satisfy the knowledge and reliability prongs set out in State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989). The appellant argued that the affidavit in this case failed to satisfy both prongs of Jacumin and contained factual allegations about Trussell's purchase of pseudoephedrine that were misleading because the affidavit failed to reveal that Trussell had purchased only seven boxes of pseudoephedrine pills since May 4, 2011. Finally, the appellant argued that the affidavit for the search warrant failed to establish probable cause because it simply alleged that Trussell would deliver a legal product, pseudoephedrine, to the appellant's home and did not allege that Trussell would receive cash or drugs for the delivery. In response, the State argued that the evidence presented at the suppression hearing failed to establish that Trussell "wasn't a citizen informant"; that the affidavit was not misleading; and that an informant's delivery of the pseudoephedrine alone, in a case involving methamphetamine, established probable cause for an anticipatory search warrant.

In a written order, the trial court denied the appellant's motion to suppress, stating as follows:

> The Defendant moved to suppress the evidence obtained as a result of the search warrant due to the failure of the affidavit to establish the reliability of the informant. The State says the informant was a citizen informant whose reliability is presumed.
>
> . . . .
>
> Having reviewed the affidavit subject to this motion, this Court concludes the informant is a criminal informant whose basis of knowledge is clearly contained in the affidavit. The Court further finds that the criminal informant's reliability is sufficiently established by the corroboration of the detectives who discovered multiple pseudoephedrine purchases by the informant as recorded in the . . . National Precursor Log Exchange database.

On December 16, 2014, the appellant pled guilty in count one to initiation of a process to manufacture methamphetamine, a Class B felony, and in counts two and four to possession of drug paraphernalia, a Class A misdemeanor. The remaining charges were dismissed. As a condition of the pleas, he reserved the following certified questions of law:

> 1. Whether the affidavit used to obtain the search warrant at issue failed to establish the requisite probable cause necessary for the issuance of a search warrant as required by the 4th and 14th Amendments to the United States Constitution and Article I sections 7 and 8 of the Tennessee Constitution?
>
> 2. Whether the affidavit used to obtain the search warrant at issue in this case contained factual allegations which were materially misleading?
>
> 3. Whether the trial court properly determined that the affidavit used to obtain the search warrant at issue contained allegations which sufficiently corroborated the information provided by the criminal informant when there was no allegation that the information was reliable?
>
> 4. Whether the trial court properly denied the Defendant's motion to suppress all of [the] evidence obtained as the result of the search of his home?

Pursuant to the plea agreement, the appellant received an eight-year sentence in count one to be served as six months in jail and the remainder on supervised probation.[1] In count two, he received a sentence of eleven months, twenty-nine days in confinement, and in count four, he received a sentence of eleven months, twenty-nine days to be served as nine months in confinement and three months on unsupervised probation. Both of the misdemeanor sentences were to be served consecutively to each other and the felony sentence.

## II. Analysis

On appeal, the appellant contends that the affidavit used to obtain the search warrant failed to establish probable cause because it failed to include any information regarding Trussell's reliability, failed to allege sufficient facts to corroborate Trussell's

---

[1] At the time of the plea hearing, the appellant had already served six months in confinement.

information, and was materially misleading in that it failed to disclose that Trussell had purchased only seven boxes of pseudoephedrine in the three years preceding the issuance of the warrant. The State argues that the trial court properly denied the appellant's motion to suppress. We conclude that the affidavit failed to establish probable cause.

As noted above, this appeal comes via properly preserved certified questions under Tennessee Rule of Criminal Procedure 37(b)(2). See State v. Armstrong, 126 S.W.3d 908, 912 (Tenn. 2003); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The issue it presents is dispositive. See State v. Oliver, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000). Although we are analyzing certified questions, we use the same standard of review as we would to analyze the underlying issue: the denial of a motion to suppress. See State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009).

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review both questions of law and the trial court's application of law to the facts purely de novo. See Hanning, 296 S.W.3d at 48; State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Our supreme court has explained that

> [t]he Fourth Amendment to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act.

State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998) (footnote and citations omitted). In this state, "a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit." Id. Specifically, "[i]n order to establish probable cause, an affidavit must set forth facts from which a

reasonable conclusion may be drawn that the contraband will be found in the place to be searched pursuant to the warrant." State v. Norris, 47 S.W.3d 457, 470 (Tenn. Crim. App. 2000). We note that "'affidavits must be looked at and read in a commonsense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

"An affidavit may include hearsay information supplied by a confidential informant as a basis to establish probable cause[, but if] the hearsay information is supplied by a criminal informant or a person from a 'criminal milieu,' we apply a two-prong test in determining the reliability of the information." State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006) (citing State v. Williams, 193 S.W.3d 502, 507 (Tenn. 2006)). In Jacumin, our supreme court espoused the two-pronged Aguilar-Spinelli test "as the standard by which probable cause will be measured to see if the issuance of a search warrant is proper under Article I, Section 7 of the Tennessee Constitution." 778 S.W.2d at 436; see Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964). Specifically, "hearsay information supplied by a confidential informant can not support a finding of probable cause unless it also contains factual information concerning the informant's basis of knowledge and credibility." Henning, 975 S.W.2d at 294-95 (citing Jacumin, 778 S.W.2d at 432, 436).

This court has explained that "under the . . . 'basis of knowledge' prong, facts must be revealed which permit the magistrate to determine whether the informant had a basis for his information or claim regarding criminal conduct." State v. Lowe, 949 S.W.2d 300, 304 (Tenn. Crim. App. 1996); see also State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). The reliability, veracity, or credibility prong deals with the truthfulness of the informant in which "facts must be revealed which permit the magistrate to determine either the inherent credibility of the informant or the reliability of his information on the particular occasion." Moon, 841 S.W.2d at 338. Courts have stressed that conclusory statements absent supportive detail will not suffice to establish these requirements. See id. at 339. However, "independent police corroboration of the information provided by the informant may make up deficiencies in either prong." State v. Powell, 53 S.W.3d 258, 263 (Tenn. Crim. App. 2000). "The requisite volume or detail of information needed to establish the informant's credibility is not particularly great." Lowe, 949 S.W.2d at 305. Nevertheless, "the affiant must provide some concrete reason why the magistrate should believe the informant." Id.

Here, the trial court found, and the State does not dispute, that the information contained in the affidavit came from a criminal informant; therefore, the affidavit had to satisfy both prongs of Jacumin. Although the trial court expressed concern about the validity of the search warrant throughout the suppression hearing, the court did not

explain in its order why it found a basis of knowledge or reliability for Trussell's information. The appellant challenges only the second prong regarding Trussell's reliability.[2]

The State contends that Trussell's reliability was corroborated by Detective Blansett's check of the pseudoephedrine database, which confirmed that Trussell had purchased pseudoephedrine, and by Trussell's giving the police detailed information about the appellant's "'leaving tubing and other items under the outbuilding and also keeps mason jars and other items inside the bedroom in his mobile home.'" We disagree with the State. To put it bluntly, the affidavit for the search warrant in this case provided absolutely no basis for Trussell's reliability or credibility. Although Trussell stated that he had purchased pseudoephedrine for the appellant, Detective Blansett's check of the pseudoephedrine database confirmed only that Trussell had bought pseudoephedrine. It did not confirm that Trussell did so for the appellant, that he delivered the drug to the appellant, or that he received cash or methamphetamine from the appellant. Likewise, Trussell's telling the detectives about the location of items used to manufacture methamphetamine at the appellant's home did nothing to show Trussell was reliable or credible when the officers did not confirm that his information was correct. We note that Detective Blansett testified at the suppression hearing that he did not corroborate any of the information provided by Trussell until after he had executed the search warrant. Thus, the affidavit failed to satisfy the reliability prong of Jacumin and failed to establish probable cause.

As to the appellant's claim that the affidavit was materially misleading, we note that the trial court did not expressly address the issue. In any event, the trial court found that the search warrant was valid. An affidavit that contains false or misleading information, though, may invalidate a search warrant. State v. Little, 560 S.W.2d 403, 407 (Tenn. 1978). In Little, our supreme court held that "there are two circumstances that authorize the impeachment of an affidavit sufficient on its face, (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause, and (2) a false statement, essential to the establishment of probable cause, recklessly made." This court has observed that the same rationale of the Little test extends to material omissions in an affidavit. See State v. Yeomans, 10 S.W.3d 293, 297 (Tenn. Crim. App. 1999). "However, an affidavit omitting potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." Id. The appellant bears the burden of

[2] The State contends that the affidavit satisfied the basis of knowledge prong by stating that Trussell had told police that he had been buying pseudoephedrine pills for the appellant, delivering them to the appellant's home, and exchanging them for cash or methamphetamine. The appellant "reluctantly concede[s]" that the affidavit adequately established the basis of knowledge for Trussell's information.

establishing the allegation of perjury or reckless disregard by a preponderance of the evidence. Id.

The appellant claims that the affidavit was "extremely misleading" because it failed to advise the issuing court that Trussell had purchased pseudoephedrine only seven times since May 4, 2011, or that Trussell's last purchase of pseudoephedrine had occurred on February 5, 2014, five weeks prior to the search at issue. We disagree with the appellant. The affidavit stated that Trussell claimed he had taken pseudoephedrine pills to the appellant on "several" occasions and that a check of the pseudoephedrine database confirmed that Trussell had purchased pseudoephedrine seven times. Moreover, although Trussell had last purchased pseudoephedrine five weeks before Detective Blansett applied for the search warrant, five weeks was not particularly remote in time. Therefore, while we agree that the affidavit lacked sufficient information to establish probable cause for the search warrant, we conclude that the appellant has failed to show that the specific statement at issue invalidated the warrant.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, the trial court's denial of the appellant's motion to suppress is reversed. His convictions are vacated, and the charges are dismissed.

_____
NORMA MCGEE OGLE, JUDGE

- 11 -