# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### SEPTEMBER 1999 SESSION

FILED

October 25, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9810-CC-00312 |
| Appellee, | ) | |
| | ) | HENRY COUNTY |
| VS. | ) | |
| | ) | HON. JULIAN P. GUINN, |
| TINA M. YEOMANS | ) | JUDGE |
| and DAVID McCLUSTER WADE, JR. | ) | |
| | ) | |
| Appellants. | ) | (Possession of Marijuana) |

**FOR THE APPELLANT:**

**VICTORIA L. DiBONAVENTURA**
104 West Washington Street, Ste. A
Paris, TN 38242

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**J. ROSS DYER**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**ROBERT "GUS" RADFORD**
District Attorney General

**STEVEN L. GARRETT**
Assistant District Attorney General
P. O. Box 94
Paris, TN 38242-0094

OPINION FILED: _____

AFFIRMED

**JOE G. RILEY, JUDGE**

## O P I N I O N

Defendants were convicted by a Henry County jury of simple possession of marijuana. In this appeal as of right, defendants contend the search warrant affidavit was insufficient to establish probable cause. After a review of the record, we **AFFIRM** the judgment of the trial court.

## FACTS

Timothy Hastings, the seventeen-year-old son of defendant Yeomans, left a "state run half-way house" without permission.[1] Valerie Hancock, twelve years of age, ran away from her grandparents' residence and accompanied Hastings to the defendants' residence[2] in Paris, Tennessee, hoping to marry him. Hastings told his mother he had been released from the half-way house, and Hancock advised Yeomans she had a note from her grandparents authorizing her to stay two weeks in Paris.

The juveniles ran away from the defendants' residence when defendant Yeomans advised them that she would take Hancock back home the next day. On November 6, 1997, the two juveniles "were found not in school and were taken to

---

[1]There was no verbatim transcript of the proceedings available. Appellant's counsel, pursuant to Tenn. R. App. P. 24(c), filed a statement of the evidence. Counsel certified that notice of filing was sent to the state. No objections were filed by the state. Although the trial judge did not approve the statement, it is deemed approved when the trial judge takes no action within 30 days after expiration of the period for filing objections. Tenn. R. App. P. 24(f). It is the trial court clerk's responsibility to send such statements to the trial judge. *Id.*

Although not relevant to the disposition of this appeal, the parties have made reference to facts not set forth in the statement of the evidence. The state has made reference to a negative drug screen of the citizen informant. Although there was a reference to the drug screen in an affidavit in the technical record, it does not appear in the statement of the evidence and was not considered.

Counsel and trial courts should be aware of the effect of failure to respond to an appellant's statement of the evidence.

[2]Apparently, defendants were living together. Some pleadings indicate Yeomans as "Tina M. Yeomans (Wade)."

2

the juvenile court authorities." The juvenile officer learned that Hastings had left the half-way house without permission and that Hancock was listed as a "missing person."

Hancock advised the juvenile officer that she knew where some marijuana was located. Deputy Sheriff Scott Wyrick was summoned and informed by Hancock that "marijuana could be found in a black pouch under the couch of the defendants['] home." Based upon his conversation with Hancock, Deputy Wyrick submitted the following affidavit in support of his request for a search warrant:

> On November 6, 1997, the affiant interviewed a 12-year-old juvenile whose name was Valerie Hancock. Hancock told the affiant that she had been staying at Tina Yeomans' residence in Henry County, Tennessee. Hancock had witnessed Tina Yeomans smoking marijuana inside the residence as late as 11-5-97. Hancock had seen Yeomans using and storing marijuana throughout Yeomans' residence.

> Hancock does know what marijuana looks like and smells like from being around it before.

> Juvenile Officer Kelly Pinson witnessed the interview between Hancock and the affiant.

> Based on Hancock's information, the affiant does believe that Yeomans has marijuana in her residence.

> Hancock gives this information willingly and asks for no payment for the information.

The affidavit was executed on November 6, 1997, and the search warrant was issued by the magistrate on the same date.

A search of defendants' home revealed "a black pouch under the couch containing a green leafy plant material which later tested to be marijuana." Marijuana was also found in the master bedroom.

3

## DEFENDANTS' CONTENTIONS

Defendants contend the search warrant affidavit was faulty. Specifically, they aver the affidavit was insufficient for the magistrate to consider Hancock a "citizen informant," and her credibility was not sufficiently established. Defendants also contend the affidavit omits material information concerning Hancock's status which was essential to the magistrate's determination of reliability. We disagree with defendants' contentions.

## INFORMANT'S STATUS

Information provided by an ordinary citizen is presumed to be reliable, and the affidavit need not establish that the source is credible or that the information is reliable. State v. Melson, 638 S.W.2d 342, 354-56 (Tenn. 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). On the other hand, if the source is a criminal informant, reliability must be determined by the two-pronged *Aguilar-Spinelli* test, as adopted by the Tennessee Supreme Court in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). Under this test, the affidavit must include "(1) the basis for the informant's knowledge, and either (2)(a) a basis establishing the informant's credibility or (2)(b) a basis establishing that the informant's information is reliable." State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993)(quoting State v. Ballard, 836 S.W.2d 560, 562 (Tenn. 1992)).

In order for the informant to be considered a citizen informant, the affidavit should contain more than conclusionary allegations that the informant was a "concerned citizen source," "acted on civic duty," and "asked for no payment for their information." State v. Stevens, 989 S.W.2d 290, 294 (Tenn. 1999). Generally, a more particularized showing of the law-abiding nature of the person supplying the information is needed. *Id.* at 295. The reliability of the informant, as well as the information furnished, must be judged from all the circumstances and from the

4

entirety of the affidavit. <u>Cauley</u>, 863 S.W.2d at 417. A finding of probable cause by the issuing magistrate is entitled to great deference. <u>Melson</u>, 638 S.W.2d at 357.

We confine our examination to the affidavit itself. The affidavit specifically names the informant, giving her age. The reason for her presence in defendants' residence was set forth; namely, she had been staying at the residence. The informant had personally witnessed the smoking of marijuana the day before the affidavit's swearing, and had seen it stored. Further, the juvenile stated that she was familiar with the appearance and smell of marijuana. Unfortunately, it is not unreasonable to conclude that a twelve-year-old would be familiar with marijuana. Although certainly not conclusive, the affidavit further states that the informant did not seek payment for the information. Even though the age of the informant is certainly relevant, the mere fact that the citizen was a juvenile, age 12, does not preclude a finding of reliability. *See* <u>Easton v. City of Boulder</u>, 776 F.2d 1441, 1450 (10th Cir. 1985)(permissible to rely upon statements of five-year-old and three-year-old children in issuing arrest warrant). In fact, a finding of probable cause may rest upon evidence which is not legally competent in a criminal trial. <u>United States v. Ventresca</u>, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

The information set forth in the affidavit is sufficient to establish the juvenile as a "citizen informant" and not a "typical criminal informant or tipster," or an informant from the "criminal milieu." <u>Melson</u>, 638 S.W.2d at 354. Accordingly, the information provided by the juvenile was credible and provided sufficient probable cause for the issuance of the search warrant.

This issue is without merit.

5

## OMISSION OF INFORMANT'S STATUS

Defendant next contends the officer misrepresented material facts by failing to include that the informant was unknown to the affiant, was a missing person, had come to Henry County to marry another juvenile, and was in the presence of juvenile authorities when she provided this information. We conclude that the omission of these facts does not affect the validity of the search warrant.

An affidavit, sufficient on its face, may be impeached only by showing "(1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause," or "(2) a false statement, essential to the establishment of probable cause, recklessly made." State v. Little, 560 S.W.2d 403, 407 (Tenn. 1978); *see also* Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667,672 (1978). A facially valid search warrant may only come under attack when the defense establishes that the search warrant was procured by officers through perjury or coercion. State v. Cannon, 634 S.W.2d 648, 650 (Tenn. Crim. App. 1982). Allegations of negligence or innocent mistakes are insufficient to invalidate the search warrant. Franks, 438 U.S. at 171. In order to be entitled to relief, a defendant must show that the reckless statements were necessary to the finding of probable cause. *Id.* at 155-56; *see also* State v. Smith, 867 S.W.2d 343, 350 (Tenn. Crim. App. 1993). The burden is on the defendant to establish the allegation of perjury or reckless disregard by a preponderance of the evidence. *See* Franks, 438 U.S. at 156.

Clearly, the defendants do not fall within purview of *Little* in that the affidavit did not contain a "false statement." Little, 560 S.W.2d at 407. Instead, defendants argue that the "omission" of material facts invalidates the search warrant. Although *Franks* and *Little* concerned only "false statements," many courts have recognized that the same rationale should extend to material omissions in an affidavit. *See* 2 LaFave, *Search and Seizure* § 4.4(b) (3d ed. 1996)(citations omitted). However, an

6

affidavit omitting potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information. <u>United States v. Atkin</u>, 107 F.3d 1213, 1217 (6th Cir. 1997).

We conclude the omission of facts relating to the informant's status in this case does not invalidate the warrant. We first note that the statement of the evidence contains nothing to indicate that the officer intentionally withheld what he considered to be material information. Although we agree that an informant's status, *i.e.* the facts and circumstances surrounding the giving of information, is generally relevant to the issue of credibility, a disclosure of this informant's status would still not reflect that the twelve-year-old was from the criminal milieu; nor would it negate the probable cause justifying the issuance of the search warrant. Other cases have held that the omission of information concerning the informant's status was not fatal to the search warrant. *See* <u>United States v. LaMorie</u>, 100 F.3d 547 (8th Cir. 1996)(omission that informant was a convicted felon not fatal); <u>State v. Lease</u>, 196 W.Va. 318, 472 S.E.2d 59 (1996)(omission that informant was under arrest for public intoxication and marijuana possession and in state of extreme agitation at time of statement not fatal).

Thus, we conclude that even if the omitted information had been included in the affidavit, probable cause still existed for the issuance of the warrant. Accordingly, this issue is without merit.

## <u>CONCLUSION</u>

Based upon our careful review of the record, we **AFFIRM** the judgment of the trial court.

7

_____
**JOE G. RILEY, JUDGE**


**CONCUR:** 8


_____
**DAVID G. HAYES, JUDGE**


_____
**THOMAS T. WOODALL, JUDGE**

8