IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs, at Knoxville, November 28, 2017

**STATE OF TENNESSEE v. TIMOTHY MARK HARTSFIELD**

**Appeal from the Circuit Court for Lawrence County**
**No. 33441      J. Russell Parkes, Judge**

_____

**No. M2016-01959-CCA-R3-CD**

_____

In 2016, the Defendant, Timothy Mark Hartsfield, entered a best interest plea to possession of methamphetamine, possession of synthetic marijuana, and unlawful possession of a firearm during the commission of a dangerous felony. The Defendant reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) as to whether the search of the Defendant's residence was valid based on statements made by the investigating officer in the search warrant application. The trial court sentenced the Defendant to ten years of incarceration. After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, J., joined.

James B. McVeigh, Spring Hill, Tennessee, for the appellant, Timothy Mark Hartsfield.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Christi L. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I.   Facts**

This case arises from the Defendant selling drugs inside his home to a confidential informant ("CI") while investigators listened to the transaction over an audio device. The CI wore a camera that recorded the transaction. Following the controlled buy, the CI provided an affidavit detailing the purchase of the drugs from the Defendant, as well as the Defendant's possession of a firearm. Based on the CI's affidavit, law enforcement

1

officers applied for a search warrant, and a magistrate approved the warrant. Investigators subsequently searched the Defendant's home and found drugs and a weapon.

## A. Motion to Suppress

The Defendant filed a motion to suppress the evidence obtained during the search of his home, contending that the chain of custody of the narcotics sold by the Defendant had been broken and contending that sufficient probable cause did not exist to support the search warrant. The trial court held a hearing on the Defendant's motion, during which the following evidence was presented: Investigator Todd Daniels testified that he was employed by the Lawrence County Sheriff's Department and assigned to the narcotics unit. On March 23, 2015, Investigator Daniels met with the CI after the CI contacted him about a potential narcotics purchase. The men met at a grocery store and, after searching the CI, the CI got inside the investigator's van. The CI told Investigator Daniels that he was going to purchase from the Defendant one gram of methamphetamine and a packet of synthetic marijuana. Investigator Daniels installed a recording device on the CI and gave him $175 in marked currency. Investigator Daniels testified that this was done in the situation of a "controlled buy."

The CI then proceeded to the Defendant's residence in his girlfriend's car, with his girlfriend present. Investigator Daniels agreed that neither the girlfriend nor her vehicle were searched. Once at the Defendant's house, investigators heard over the audio device the CI enter the home and speak with the Defendant. During their conversation, the Defendant spoke of having a .380 caliber gun in his home. The State offered the video recording of the CI and the Defendant's interaction as evidence and then played it in open court. Investigator Daniels confirmed he did not watch the video before applying for the search warrant but relied on what he heard over the audio transmission of the transaction.

The video showed the CI and the Defendant inside the Defendant's residence. A portion of the .380 caliber weapon is visible on the recording. The video showed the CI giving the Defendant the $175 in marked bills, and the Defendant counting the money. The video recording shows the CI displaying the synthetic marijuana and methamphetamine packages. Investigator Daniels confirmed that the CI, as he had been instructed to do, made the drugs clear in the video recording so that they could be identified. Investigator Daniels agreed that in the application for the search warrant he stated that the video recording showed the drugs and money being exchanged and that that statement was false; he clarified that "counting money" could be heard on the recording but the actual exchange was not recorded.

On cross-examination, Investigator Daniels testified that he field tested the drugs that the Defendant sold to the CI before he applied for the search warrant. The drugs

tested positive for the substances the CI claimed they would be. He stated that, having had prior dealings with the Defendant, Investigator Daniels recognized the Defendant's voice on the recording. Investigator Daniels denied putting any information in the search warrant application that he knew to be false.

On redirect-examination, Investigator Daniels testified that he did not intentionally make false statements in the search warrant application but acknowledged that the application contained untrue statements.

Based on these facts, the trial court denied the Defendant's motion to suppress in an agreed order, stating the following:

> The Court finds that after review of the search warrant itself, the search warrant does establish and the affidavit establishes probable cause for which the search warrant could be issued.

> The next issue before the Court is the issue as more specifically addressed by [the Defendant] in directing the Court's attention to [*State v. Little*, 560 S.W.2d 403 (Tenn. 1978)], and the State directing the Court's attention to [*Franks v. Delaware*, 438 U.S. 154 (1978)] . . . The Court reviewed both of those.

> The Court, after having the opportunity to review the witness and the witness'[s] demeanor on the witness stand, first makes a finding that the witness did not willfully . . . provide false statements with an intent to deceive. To the extent necessary, this Court also finds that the statements, even if some of those statements were not correct, find that the statements were not made with an intent to deceive. I also find that the statements were not made recklessly.

> . . .

> And I also find that to the extent necessary, the affiant did not conceal any truths from [the magistrate judge] that this affiant had a reasonable belief that all the statements made in the affidavit as provided in support of the search warrant were accurate and true.

The agreed order also reserved for appeal the following certified question of law:

a. Were the false statements – either willfully or recklessly made – by Investigator Daniels in his Affidavit in Support of Search Warrant essential to the

3

establishment of probable cause?

b. Was the search warrant issued upon evidence consisting in material part of willful or reckless misrepresentations of the applicant to the issuing judge in violation of Tenn. R. Crim. P. 41(g)(3)?

c. If the search warrant was issued upon evidence consisting in material part of willful or reckless misrepresentations of the applicant to the issuing judge, should the search warrant be declared invalid and any evidence seized as a result of the subsequent search be suppressed in the above-styled case?

Thereafter, the Defendant entered a best interest plea to possession of methamphetamine, possession of synthetic marijuana, and unlawful possession of a firearm during the commission of a dangerous felony. The trial court entered the judgments incorporating the above certified question of law and sentenced the Defendant to ten years of incarceration.

## II. Analysis
### A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this Court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This Court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This Court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)). Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a defendant may appeal from any judgment or conviction occurring as the result of a guilty plea. *State v. Long* 159 S.W.3d 885, 887 (Tenn. Crim. App. 2004). The following are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

(i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

(ii) The question of law is stated in the judgment or document so as to

4

identify clearly the scope and limits of the legal issue reserved;

(iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

(iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In *Preston*, our supreme court stated its intention to "make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv)." 759 S.W.2d at 650. Failure to properly reserve a certified question of law pursuant to the requirements stated in *Preston* will result in the dismissal of the appeal. *Woodlee*, 2010 WL 27883, at *2 (citing *State v. Pendergrass*, 937 S.W.2d 848, 838 (Tenn. 1996)). The importance of complying with the *Preston* requirements has been reiterated by our supreme court in *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003), which stated that the *Preston* requirements are "explicit and unambiguous," in rejecting the defendant's argument in favor of substantial compliance with Tennessee Rules of Criminal Procedure 37. *Id.* at 912.

In the case under submission, the Defendant's issue on appeal meets these requirements: he entered a best interest plea of guilt; the amended judgment forms incorporated the certified question; and the certified question is stated so as to identify clearly the scope and limits of the legal issue reserved and is dispositive of the case. Thus, we conclude that the issue is properly before this Court.

**B. Validity of the Search Warrant**

The Defendant contends that Investigator Daniels included false statements in his affidavit in support of the search warrant and that probable cause could not have been established without these false statements. This, the Defendant claims, makes the search warrant invalid and the evidence seized in the search illegal. The State replies that probable cause existed for the search warrant even without Investigator Daniels's statements because the affidavit detailed that the CI entered the Defendant's home and bought drugs from him, and that the transaction was monitored over audio by Investigator Daniels. For these reasons, the State claims that the trial court properly denied the Defendant's motion to suppress. We agree with the State.

5

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23. This Court reviews de novo the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23.

We begin our analysis with the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, will not be violated, and no warrants will issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Similarly, article I, section 7 of the Tennessee Constitution provides:

> [P]eople shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and not to be granted.

Tenn. Const. art. I, § 7.

"[A] search warrant shall be issued only on the basis of an affidavit, sworn before a 'neutral and detached' magistrate, which establishes probable cause of its issuance." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999). To establish probable cause to issue a search warrant, an affidavit must supply reasonable grounds for suspicion that an illegal act is occurring. *Id.* Thus, the need for the magistrate to make a neutral and detached decision regarding the existence of probable cause requires that the affidavit contain more than mere conclusory allegations by the affiant. *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992).

An affidavit must show a nexus between the criminal activity, the place to be searched, and the items to be seized in order to give a magistrate probable cause to issue a warrant. *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). When the affidavit contains no direct evidence of such a nexus, "we must . . . determine whether it was reasonable for the magistrate to infer that the item of contraband listed in the affidavit would be located" in the place to be searched. *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009).

> [T]here are two circumstances that authorize the impeachment of an affidavit sufficient on its face[:] (1) a false statement made with intent to deceive the Court, whether material or immaterial to the issue of probable cause[;] and (2) a false statement, essential to the establishment of probable cause, recklessly made." *State v. Little*, 560 S.W.2d 403, 407 (Tenn. 1978). "Allegations of negligence or innocent mistakes are insufficient to invalidate the search warrant." *State v. Yeomans*, 10 S.W.3d 293, 297 (Tenn. Crim. App. 1999) (citing *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). The defendant bears the burden of proving the allegation of falsity by a preponderance of the evidence. *Id.* (citing *Franks*, 438 U.S. at 156, 98 S.Ct. 2674).

*State v. Tuttle*, 515 S.W.3d 282, 308 (Tenn. 2017).

The search warrant affidavit in this case set forth the following grounds:

> On Monday March 23, . . . at approximately 1:45 P.M. Investigators Todd Daniels, Jason Runnels and Jon Roberts with the Lawrence County Sheriff's Department met with a confidential source referred to here in [sic] as [the CI]. We discussed the purchase of 1 gram of Methamphetamine and 10 grams of synthetic marijuana from [the Defendant] at 244 Dry Weakley Road in Ethridge TN. The above listed drugs were going to be sold by [the Defendant] to [the CI] for the amount of $175.00 U.S. currency. At approximately 1:55 P.M. [the CI] was searched [and] no illegal weapons[,] drugs or contraband were found. [The CI] was then issued $175.00 in prerecorded U.S. [currency] as well as a video recording device to record the drug transaction. [The CI] was also fitted with a live listening device to monitor the drug transaction.
>
> [The CI] then departs Investigators and is followed by me and Investigator Runnels in an undercover vehicle. Jon Roberts also follows [the CI] in a separate undercover vehicle. At no time did we lose visual contact with

7

[the CI].   I and Investigator Runnels parked down the road to monitor the listening device.   Investigator Roberts maintains visual contact with [the CI].   [The CI] knocks on the door of the residence at 244 Dry Weakley Road in Ethridge TN.   [The CI] is invited into the residence by [the Defendant].   [The CI] talks with [the Defendant] for a period of time.   I can hear [the CI] on the audio feed discussing the handgun laying near [the Defendant].   [The Defendant] tells [the CI] the handgun is a .380 caliber gun.   [The CI] then hands [the Defendant] $175.00 in prerecorded U.S. currency [and] in return [the Defendant] tells [the CI] to get the dope off the top of the refrigerator.   [The CI] retrieves the drugs and talks with [the Defendant] for a short time.   The drugs and money exchange are captured on the video recording device.   [The CI] then leaves and is surveilled back to a predetermined location to meet with Investigators at no time was [the CI] out of sight of Investigators.   [The CI] is debriefed and hands Investigator Daniels a baggy containing white powdery substance and also a red package marked Super Strong Incense believed to be Synthetic Marijuana[.]   [The CI] also tells us about the handgun near [the Defendant].   [The Defendant] is a convicted felon.   [The CI] is searched [and] no illegal weapons, drugs or contraband are found.   [The CI] then departs Investigators at approximately 2:25 P.M.   The white powder substance did test field positive for Methamphetamine.   The synthetic Marijuana was packaged in a red container labeled Super Strong Incense. Pictures were taken of the items and all items logged into evidence at CID evidence storage.   The entire drug transaction was captured on the video recording device.

The evidence does not preponderate against the trial court's findings that the search warrant was valid with sufficient probable cause.   The affidavit does state that the "entire" drug transaction was recorded on video, and Investigator Daniels acknowledged in his testimony that that statement was not true because part of the transaction was obscured from view on the video recording.   However, Investigator Daniels stated that, when writing the affidavit, he relied on the real time audio recording of the drugs transaction, which he monitored while it was taking place, and on the CI's statements about the encounter, which were consistent with what was relayed over the audio transmission.   He testified that over the transmission he heard that the CI had spotted a weapon in the Defendant's residence, described as a "three eighty," and heard the CI giving money to the Defendant for the drugs to complete the drug transaction.   The CI returned from the Defendant's residence with the amount of drugs he had specifically sought from the Defendant.   This information supported the issuance of the search warrant and, therefore, the evidence was seized pursuant to the lawful execution of the search warrant.

The Defendant contends that the search warrant should have been declared invalid because of Investigator Daniels's misrepresentations in the application. While the record establishes that Investigator Daniels was imprecise in his language, we disagree that his statement was a misrepresentation. While the drug transaction was not *entirely* visible in the video recording, it is clear that a transaction occurred and drugs are visible at some point during the recording. Additionally, the Defendant fails to establish that Investigator Daniels recklessly included false information in the affidavit. Furthermore, he testified that he did not rely on the video when drafting the affidavit, meaning that his statement as to the video's contents had no impact on the information included in the affidavit. Accordingly, the trial court did not err when it denied the Defendant's motion to suppress. The Defendant is not entitled to relief.

## III. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

9