IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 12, 2025 Session

## STATE OF TENNESSEE v. ROBERT LAWRENCE RYDER

**Appeal from the Circuit Court for Rutherford County**
**No. 88241     Howard W. Wilson, Chancellor**

_____

**No. M2024-01717-CCA-R9-CO**

_____

In this interlocutory appeal, the State asks this court to review the trial court's suppression of Defendant's blood alcohol test. After reviewing the entire record, the briefs and oral arguments of the parties, and the applicable law, we reverse the trial court's order granting Defendant's motion to suppress the result of his blood alcohol test.

**Tenn. R. App. P. 9 Interlocutory Appeal as of Right; Judgment of the Circuit Court Reversed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Ashley Chisum Hall and Brent Pierce, Assistant District Attorneys General, for the appellant, State of Tennessee.

Drew Justice, Murfreesboro, Tennessee, for the appellee, Robert Lawrence Ryder.

## OPINION

### Facts and Procedural History

In October 2022, the Rutherford County Grand Jury entered a true bill charging Defendant, Robert Lawrence Ryder, with vehicular homicide by intoxication, vehicular homicide, reckless endangerment with a deadly weapon, driving under the influence ("DUI"), DUI with blood alcohol concentration ("BAC") over 0.08%, possession of an open container, and violation of the implied consent law based on a two-car collision in Rutherford County that resulted in the death of Brittany Cole. Following the collision,

Defendant was transported to a hospital where he refused Officer Austin Reed's request to submit to a blood test to determine his blood alcohol concentration. Officer Reed then presented an affidavit and obtained a warrant to draw Defendant's blood. *See* T.C.A. §55-10-406(b)(2)(C). Defendant's BAC was 0.186, over twice the legal limit. *See id.* § 55-10-401(2).

Prior to trial, Defendant filed a motion to suppress the BAC test result and a statement he made at the hospital to Officer Reed. Defendant claimed that he was ostensibly detained for purposes of *Miranda*[1] when he was transported to the hospital for treatment and that statements he made at the hospital that he was the driver of the truck involved in the collision and that he consumed alcohol earlier in the evening before the crash, were made without the benefit of *Miranda* warnings and without the presence of an attorney despite Defendant's demands for an attorney. Defendant argued further that without his admissions, the facts in the affidavit in support of the warrant did not establish probable cause to justify a blood draw.[2]

The State responded that because Defendant was not in custody when he spoke to Officer Reed at the hospital, any statements Defendant made were not in violation of Defendant's constitutional rights and were properly considered by the magistrate in determining probable cause. The State argued that under the totality of the circumstances, the facts set forth in the affidavit were sufficient to show probable cause for the warrant to draw Defendant's blood.

At the suppression hearing, Murfreesboro Police Department ("MPD") Officer Brent Collins testified he was assisting a fellow officer change a flat tire on his patrol car when he observed a full-size black truck driving at "a high rate of speed." Both officers looked up when the truck drove by them because the truck accelerated and the engine was "striking" or loud. Officer Collins relayed his observations about the truck to other officers at the scene after the collision, but he could not identify which officers.

Officer Jason Ayers arrived at the crash site around 2:35 a.m. He observed a white sedan in the middle of the intersection of Memorial and Clark with "severe driver-side intrusion." Officer Ayers was at the scene when Ms. Cole was declared dead. Officer Ayers saw Defendant standing next to an overturned black truck. Another officer was already with Defendant. Officer Ayers could not recall the officer's name but remembered the officer telling him that Defendant was the driver of the truck and may

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] In his motion, Defendant also argued that his BAC result and his statements at the hospital should be suppressed because he did not receive a copy of the search warrant. *See* Tenn. R. Crim. P. 41. He does not make that argument on appeal.

have been impaired. Officer Ayers testified that his interaction with Defendant lasted "seconds." It was "apparent" to him based on his experience that "severe speed" was at play given the significant damage to the driver side of Ms. Cole's car and the distance from the point of impact to where the vehicles rested. He testified that he relayed his observations about the crash site to Officer Reed.

Kristina Yovino, an advanced EMT with the Rutherford County EMS first approached the black truck when she arrived at the crash site which she described as "chaotic." Ms. Yovino testified that here were "lots" of first responders, officers, and fellow EMTs in "a very large debris field[.]" She recalled seeing a case of beer next to the truck. Defendant identified himself as the driver of the truck. Ms. Yovino observed an abrasion or a surface level injury on Defendant's forehead. She found it "unusual" that Defendant did not appear to be upset or anxious given the significance of the crash. Her interaction with Defendant lasted no more than two minutes before a second EMT unit arrived to take over Defendant's treatment and evaluation. She did not recall telling any officers about her interaction with Defendant.

Kyle Ferree was the first MPD officer to arrive at the scene and described it as "a very chaotic scene" with "multiple people running around." He first went to the overturned truck to see whether anyone was inside. Defendant came from behind the truck and told Officer Ferree that he was the driver. According to Officer Ferree, Defendant's face was bloody and his appearance was disheveled. Officer Ferree instructed Defendant to sit down because he was "stumbling" around and "seemed out of it." Officer Ferree stood by as Defendant was being evaluated by the paramedics. He did not recall hearing any discussion of Defendant's being intoxicated while driving.

Daniel Klintworth, a paramedic with the Rutherford County EMS, directed his attention to the truck because another ambulance personnel was rendering care to Ms. Cole in the white sedan. Mr. Klintworth took over from the EMT who conducted the initial triage of Defendant. Mr. Klintworth learned that Defendant was the driver of the truck. Defendant appeared to be disoriented and complained of neck pain. He also engaged in repetitive questioning. Defendant did not appear to have any broken bones because he was walking around. As part of his assessment, Mr. Klintworth asked Defendant whether he had consumed any alcohol. Defendant replied that he had two beers approximately two hours before the crash. Mr. Klintworth did not recall any officers being present when Defendant made the admission, nor did he recall giving this information to any law enforcement officers. Mr. Klintworth gave the hospital staff a summary of his assessment of Defendant which included Defendant's statement about having consumed two beers. He recalled seeing an officer standing outside Defendant's hospital room but did not tell the officer about Defendant's admission.

Officer Caleb Donnell was dispatched to the hospital to keep watch on Defendant until Officer Reed arrived. He did not participate in the investigation of the case or interact with Defendant except to retrieve Defendant's cell phone. Officer Donnell denied that he told Defendant he was under arrest. Officer Donnell did not recall any mention of Defendant's having consumed alcohol before the crash.

Officer Reed, a trained officer in DUI detection and investigation, testified that he "self-dispatched" to the scene given the "severity of the accident" as described in the police dispatch. He opined that the crash was "violent" because of the "large debris field" and the fact that there were parts of each vehicle strewn all over the roadway. He observed "very serious, significant damage" to a white sedan; the driver side was "pushed almost completely into the passenger side." A black truck was flipped over on its side. As an investigator in the Fatal Accident Crash Team ("FACT"), Officer Reed assumed the role of lead investigator when Ms. Cole died at the scene.

As part of the FACT investigation, Officer Reed sketched a diagram of the crash site. He observed a case of alcohol in the middle of the intersection near the crash scene. He also spoke with officers at the scene who indicated that "alcohol may have been in play." He later clarified that he learned from officers and EMTs that Defendant admitted to having had two drinks around "dinner-time." At that point in his investigation, he began to suspect the possibility that alcohol may have played a role in the crash. He observed Defendant at the scene but had no interaction with him there. At the scene, Officer Reed learned from other officers that Defendant had driven the black truck and that he had admitted to drinking alcohol before the crash.

As part of his investigation, Officer Reed went to the hospital to talk to Defendant about the crash. He added that had Ms. Cole survived, he would have also interviewed her for the investigation. He denied that anyone had been determined to be at fault for the crash or that Defendant had been charged at that point.

Officer Reed testified that he asked Defendant questions typical for an accident investigation such as where Defendant had been and where he was heading at the time of the crash. According to Officer Reed, Defendant was "very uncooperative" and declined to give a definitive answer to questions about the crash except to admit to being the driver of the truck. Officer Reed did not recall Defendant telling him that he had consumed alcohol before the crash; he maintained that he got this information from officers at the scene but could not identify the specific officers.

Officer Reed observed that Defendant's eyes were watery and bloodshot, both common signs of impairment. Officer Reed did not have Defendant perform a standardized field sobriety test ("SFST") or a horizontal gaze nystagmus ("HGN") test

- 4 -

because Defendant had sustained a head injury which would undermine the accuracy of both tests.

Officer Reed testified that he had sufficient information to suspect alcohol and to ask for implied consent for a blood draw. He based his decision on "the violence of the accident, alcohol having been found on scene; statements [Defendant] had consumed alcohol; and [Defendant's] red, watery eyes." Defendant refused to consent to a blood draw without first consulting with his attorney and he insisted on being released from the hospital. Officer Reed testified that he then ceased all questioning and left the hospital to apply for a search warrant.

A copy of the affidavit and the warrant were exhibited to Officer Reed's testimony. Officer Reed explained that the MPD used a pre-printed affidavit form that he completed by hand. In the affidavit, Officer Reed stated that he had been an officer with MPD for five years and that he had additional training in SFST; Advanced Roadside Impaired Driving Enforcement ("ARIDE"), and as a Drug Recognition Expert ("DRE"). Officer Reed explained that ARIDE provides training in identifying drivers in vehicle accidents who may be under the influence of alcohol or drugs and that DRE provides training in recognizing drivers who are under the influence of drugs.

In the affidavit, Officer Reed described Defendant as the suspect noting that Defendant admitted that he was the driver of the vehicle that had crashed "just ten minutes" before Officer Reed's arrival at the site at 2:43 a.m. On the affidavit form, Officer Reed described "[f]acts leading me to believe the suspect was intoxicated while operating, and/or in physical control of, a motor vehicle in a public place":

> Vehicle T-Boned another vehicle on Memorial at a high rate of speed, killing the other driver. Two officers stated they observed his vehicle (black truck) driving at excessive speeds.

Officer Reed also checked the following boxes indicating his observations about Defendant suggesting impairment: his eyes were bloodshot and watery; his speech was slow, talkative, and repetitive; and his appearance was disorderly. Officer Reed gave the following hand-written explanation for having no observation of Defendant's balance, walk or turn: "Driver was in the hospital, and due to the severity of the accident, was unable to perform SFST, and I was unable to see him walk/balance/turn."

In section ten of the affidavit, the form read: "Suspect's oral statements: The suspect made the following statements:" Officer Reed wrote: "Stated he had consumed alcohol prior in the night." At the suppression hearing, Officer Reed testified that "oral statements" included statements made directly to the affiant or relayed to the affiant from

another officer. He testified that the manner in which he phrased section ten "implie[d]" that the statement was relayed to him by other officers.

In terms of "refusal evidence," Officer Reed wrote in the affidavit that Defendant "[s]tated he wanted to be released from [St. Thomas Rutherford] and have a lawyer present." Officer Reed marked the following section in detecting alcohol detection and intoxication-related offenses:

> During the course of my employment, I have observed numerous people who were under the influence of alcohol and/or other substances. Additionally, I have formed opinions on intoxication on many occasions, and have had my suspicions confirmed by blood samples that were analyzed after I performed my duties as a law enforcement officer relating to the detection of intoxicated drivers.

Section 15 of Officer Reed's sworn affidavit provided the following summary:

> Based upon my experiences, my training in intoxication-related offenses, my observation of the suspect, and the results of the tests performed by the suspect, if any, during my contact with the suspect, I believe that the suspect is intoxicated, lacking the normal use of mental or physical faculties by reason of the introduction of alcohol, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, a combination of two or more of those substances, or any other substance into the suspect's body.

Based on Officer Reed's affidavit, the magistrate issued a search warrant for Defendant's blood. His BAC was 0.186.

Defendant testified that he recalled waking up in a hospital bed with a neck brace. He had sustained a concussion and had fractured his spine. Defendant testified that he told Officer Reed he had "maybe two beers at dinner" around 5:00. Defendant conceded that he had lied about how much he had had to drink before the collision. He testified that from approximately 8:30 p.m. to before 2:30 a.m., he had as many as nine or more drinks at two different establishments. Defendant confirmed that he was given a copy of an implied consent form to sign and that he refused to sign the form because it had not been filled out and he wanted to talk to his lawyer first. Defendant maintained that despite his repeated demands for counsel, Officer Reed continued to question him about the crash.

In a post-hearing memorandum, Defendant argued that Officer Reed "recklessly falsified his affidavit and failed to document his real source of knowledge" concerning Defendant's alcohol consumption and that without information about Defendant's admitted consumption of alcohol before the crash, the affidavit lacked probable cause.

On July 1, 2024, the trial court entered an order denying Defendant's motion to suppress the results of the BAC test on the grounds that the search warrant was supported by sufficient probable cause, that Defendant failed to establish by a preponderance of the evidence that Officer Reed recklessly or intentionally included false information in the affidavit, and that Defendant's statement about alcohol consumption was not made in violation of his *Miranda* rights. In finding that Officer Reed had not acted recklessly or intentionally by including information about Defendant's alcohol consumption as relayed to him by other officers, the trial court accredited Officer Reed's testimony.

On September 13, 2024, Defendant filed a motion to reconsider the trial court's denial of his suppression motion arguing that the trial court failed to address Officer Reed's failure to identify his source of knowledge concerning Defendant's consumption of alcohol the night of the crash. The trial court agreed and on October 14, 2024, entered an order amending its previous order and granting the motion to suppress. The trial court determined that it had "erroneously considered facts that were not or should not have been put into the affidavit," specifically, that it should not have considered the observation of an alcohol container in the road after the crash because it was not included in the affidavit.

The trial court characterized the statement in the affidavit that Defendant "[s]tated he had consumed alcohol prior in the night," as unreliable hearsay:

> As the Defendant argues, this description gives the [c]ourt less information about the context and source of the hearsay statement than the facts in *Smotherman*.[3] The affiant included no information as to the source of the statement that he included in the affidavit, and therefore the statement is not reliable. Without any indication as to the source of this statement, it is impossible for the [c]ourt [to] determine its reliability and the statement cannot serve to demonstrate probable cause that the Defendant was driving under the influence. Therefore, the [c]ourt's probable cause determination must be made without considering this unreliable hearsay. Furthermore, it is unclear to the [c]ourt [from] whom Officer Reed did hear the statement[.] Because the hearing consisted of conflicting testimony regarding the

---

[3] *State v. Smotherman*, 201 S.W.3d 657 (Tenn. 2006).

content and timing of the statement, the [c]ourt views it as imprudent to decide the statement's reliability on other grounds.

The trial court held that without information about Defendant's consumption of alcohol, the remaining facts in the affidavit were insufficient to show probable cause that Defendant was impaired when driving:

The fact that the Defendant was speeding, while evidence of a violation of law, is not probative of whether the Defendant was intoxicated. Likewise, it is improper to infer from the facts that the incident occurred, the time at which the incident took place, or that the Defendant was driving the truck that the Defendant was intoxicated. Thus, the [c]ourt is left [to] only consider the Defendant's watery, bloodshot eyes and the Defendant's repetitive, slow speech.

As the [c]ourt stated in its original order, the Defendant's watery, bloodshot eyes and manner of speaking are potentially indicia of criminal behavior, particularly with corroborating facts. However, the Defendant's severe car accident and subsequent treatment at the hospital are equally plausible and innocent explanations for these symptoms. Without the corroborating facts that the [c]ourt cannot consider, the [c]ourt finds that the Affidavit in Support of the Search Warrant simply does not articulate facts sufficient for a finding of probable cause in this matter. The practical considerations of everyday life and common[]sense dictate both that these facts are very possibly completely innocent and as they stand alone do not give rise to more than a reasonable suspicion that the Defendant was intoxicated.

On October 22, 2024, the State requested an interlocutory appeal which the trial court granted and certified the issue for appeal as follows:

1. Whether the defendant failed to show the hearsay statement in the affidavit in support of the search warrant was unreliable at the motion to suppress hearing, and the trial court erred in its *Franks*[4] analysis by concluding that the affidavit contained unreliable hearsay; and

2. Whether the affidavit established probable cause without the hearsay statement.

This court granted the State's application for an interlocutory appeal.

---

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

**Analysis**

In this interlocutory appeal from the trial court's decision to suppress the results of the BAC test, the State contends that Officer Reed's statement in the affidavit that Defendant had consumed alcohol before the crash was not unreliable hearsay and that the trial court erred in its ruling that Officer Reed recklessly included the statement in his affidavit.  Defendant contends that the trial court's order should be upheld and that Officer Reed's statement should be excluded when assessing whether the affidavit established probable cause.  Defendant also claims the affidavit on its face, without the unreliable hearsay, fails to establish probable cause for the search warrant.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."  *State v. Green*, 697 S.W.3d 634, 640 (Tenn. 2024) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)).  Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  *Id.* (quoting *Odom*, 928 S.W.2d at 23).  However, "the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness."  *Id.* (quoting *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014)); *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012).  The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence."  *State v. McKinney*, 669 S.W.3d 753, 764 (Tenn. 2023) (quoting *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010)).

Generally, courts will presume that a search was reasonable if it was conducted pursuant to a valid warrant.  *State v. McElrath*, 569 S.W.3d 565, 570 (Tenn. 2019); *Franks v. Delaware*, 438 U.S. 154, 171 (1978) (stating, "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.").  A sworn and written affidavit containing allegations from which a magistrate may determine whether probable cause exists is an "indispensable prerequisite" to the issuance of a search warrant.  *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998).

"'Articulating precisely what probable cause means is not possible.'"  *State v. Reynolds*, 504 S.W.3d 283, 300 (Tenn. 2016) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quotation marks and alterations omitted)).  "Probable cause is more than a mere suspicion but less than absolute certainty."  *Id.* (internal citations and quotation marks omitted).  "[T]he strength of the evidence necessary to establish probable cause . . . is significantly less than the strength of evidence necessary to find a defendant guilty beyond a reasonable doubt."  *State v. Bishop*, 431 S.W.3d 22, 41 (Tenn. 2014).  Moreover, probable cause deals with probabilities. *Reynolds*, 504 S.W.3d at 300.  "These

[probabilities] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

When considering whether probable cause supports the issuance of a search warrant, this court "may consider only the affidavit and may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant." *State v. Tuttle*, 515 S.W.3d 282, 299 (Tenn. 2017) (quoting *State v. Henning*, 975 S.W.2d 290, 295 (Tenn. 1998)). In *Tuttle*, our Supreme Court overruled *Jacumin* and adopted the totality-of-the-circumstances analysis established in *Illinois v. Gates*, 462 U.S. 213 (1983). *Tuttle*, 515 S.W.3d at 305-08. The standard of review is "whether the evidence viewed as a whole provided the magistrate with 'a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.'" *Id.* (quoting *State v. Jacumin*, 778 S.W.2d 430, 432 (Tenn. 1989)).

Unlike proof at trial, an affidavit may include information that would not be admissible as evidence in a criminal trial. *Brinegar*, 338 U.S. at 172-73. As relevant to this appeal, an affidavit does not need to reflect the direct personal observations of the affiant. *Henning*, 975 S.W.2d at 294; *Jacumin*, 778 S.W.2d at 432. The reliability of hearsay information included in an affidavit is evaluated differently, however, depending upon its source. *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006). If the source of the information is a law enforcement officer, "[n]o special showing of reliability is necessary." *Smotherman*, 201 S.W.3d at 663 (citing *United States v. Ventresca*, 380 U.S. 102, 111 (1965)). But this presumption of reliability applies only if the affidavit states that the "information [was] provided by other officers." *Id.* (citing *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986)).

Relevant to this appeal is Defendant's assertion that Officer Reed's affidavit contained false statements in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, a defendant may challenge the veracity of statements in a search warrant affidavit only if the defendant can make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit. *Franks*, 438 U.S. at 155. Thus, in order to obtain relief, a defendant must show that the statement was necessary to the finding of probable cause. *State v. Hardison*, 680 S.W.3d 282, 310 (Tenn. Crim. App. 2023) (citing *Franks*, 438 U.S. at 155-56).

An affidavit may be impeached under two circumstances: "(1) a false statement made with intent to deceive the court, whether material or immaterial to the issue of probable cause; and (2) a false statement, essential to the establishment of probable cause, recklessly made." *Tuttle*, 515 S.W.3d at 308 (quoting *State v. Little*, 560 S.W.2d

403, 407 (Tenn. 1978)). "Recklessness may be established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time." *Little*, 560 S.W.2d at 407. "Allegations of negligence or innocent mistakes are insufficient to invalidate the search warrant." *Tuttle*, 515 S.W.3d at 308 (quoting *State v. Yeomans*, 10 S.W.3d 293, 297 (Tenn. Crim. App. 1999)). The defendant has the burden to establish the allegation of perjury or reckless disregard by a preponderance of the evidence. *Tuttle*, 515 S.W.3d at 308; *Franks*, 438 U.S. at 155-56).

## I.    Unreliable Hearsay in the Affidavit

Before addressing the sufficiency of the affidavit, we must first address whether the statement in section ten of the affidavit should be excluded as a false statement made with the intent of misleading the court or recklessly made.

Although Officer Reed did not state in the affidavit that information about Defendant's alcohol consumption before the crash was conveyed to him by other officers, the record shows that the statement was not false when Officer Reed applied for the warrant. Indeed, no proof was presented to support Defendant's claim that the statement was false, much less that it was intentionally or recklessly made. At the suppression hearing, Officer Ayers testified that he learned from the officer tending to Defendant at the crash scene that Defendant may have been impaired while driving; Officer Ayers relayed his observations of the crash to Officer Reed. Paramedic Klintworth testified that Defendant admitted to having two beers approximately two hours before the crash and included this information in his summary to the hospital. Defendant testified that at the hospital, he told Officer Reed he had consumed two beers before the crash and he testified at the hearing that he had consumed as many as nine alcoholic beverages. Based on the proof at the hearing, the statement in Officer Reed's affidavit that Defendant "[s]tated he had consumed alcohol prior in the night" was not false.

Further, there is no proof that Officer Reed included the statement in the affidavit recklessly. *Little*, 560 S.W.2d at 407 (defining "recklessness" as a statement that was false when made and that the affiant lacked reasonable grounds for believing the statement to be true at that time). On the contrary, Officer Reed possessed reasonable grounds to believe the statement of Defendant's alcohol consumption to be true. The record does not support Defendant's claim that Officer Reed included a false statement in his affidavit.

Officer Reed could have been more precise in his affidavit by indicating that Defendant's statement about alcohol consumption came from other officers at the scene as he did when describing Defendant's driving behavior observed by other officers. However, based on the facts in the record, Officer Reed's failure to include the source of

that information was at most negligent drafting and not a false and reckless statement. "Allegations of negligence . . . are insufficient to invalidate the search warrant." *Tuttle*, 515 S.W.3d at 308 (quoting *Yeomans*, 10 S.W.3d at 297). Petitioner cannot show the existence of a false or reckless statement that was *also* necessary to establish probable cause, in order to invalidate the warrant. *Franks*, 438 U.S. at 155-56. We conclude that the trial court abused its discretion in granting Defendant's motion to suppress based on a *Franks* violation.

## II.    Sufficiency of the Affidavit

Defendant argues that even with the inclusion of Officer Reed's statement about Defendant's prior consumption of alcohol, "it is dubious whether the affidavit contains probable cause." Applying the previously discussed standards regarding affidavits, we conclude that Officer Reed's affidavit provided the magistrate with a substantial basis from the totality of the circumstances that a search warrant for Defendant's blood would uncover evidence of wrongdoing. In the affidavit, Officer Reed explained the basis for the investigation, recited information provided by officers at the scene, including excessive speeding and prior consumption of alcohol, and marked his observations of the crash site and Defendant's physical state and demeanor following the crash. Defendant admitted that he was driving the vehicle that "T-boned" the decedent's car. *State v. Singh*, 684 S.W.3d 774, 782 (Tenn. Crim. App. 2023) (concluding that evidence was legally sufficient to support convictions for DUI where among other things, the defendant admitted to driving his car into a mailbox across from his home and offered no explanation for the crash). Two officers observed Defendant driving at a high rate of excessive speed shortly before the crash. *See State v. Kroese*, No. M2022-01180-CCA-R3-CD, 2024 WL 2034366, at *13-15 (Tenn. Crim. App. May 7, 2024) (holding that elements of fatal crash were inconsistent with unimpaired driving and therefore supported probable cause for a search warrant for a blood draw); *perm. app. denied* (Tenn. Jan. 22, 2025). Although Officer Reed was unable to administer field sobriety tests or the horizonal nystagmus tests for possible impairment due to Defendant's injuries, Officer Reed observed that Defendant's eyes were bloodshot and watery, that his speech was slow, talkative, and repetitive, and that his appearance was disorderly. The affidavit set out Officer Reed's specialized training in DUI detection and vehicle accident investigation and how such training along with his experience in other DUI cases formed his decision to seek a warrant. The affidavit further stated that based on Officer Reed's specialized training and his observations of Defendant, he believed Defendant was intoxicated.

Based on the totality of the circumstances in this case, we conclude that the search warrant for the Defendant's blood was supported by probable cause. We reverse the trial court's order granting the motion to suppress Defendant's BAC test result.

## CONCLUSION

Based on the foregoing, the trial court's order granting Defendant's motion to suppress his BAC result is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

S/*Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE