IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2018 Session

**STATE OF TENNESSEE v. WHELCHEL RANDALL HOGAN**

**Appeal from the Circuit Court for Dickson County
No. 22CC-2014-CR-49     Larry J. Wallace, Judge**

_____

**No. M2017-02254-CCA-R3-CD**

_____

Following the denial of a suppression motion, the defendant, Whelchel Randall Hogan, entered a guilty plea in Dickson County Circuit Court to possession with intent to sell or deliver .5 grams or more of cocaine and reserved the right to appeal a certified question of law relating to the initial seizure of the defendant and the validity of the search warrant issued in this case. The defendant asserts the police did not have reasonable suspicion for the initial seizure of the defendant and the search warrant issued in this case lacked probable cause. Upon our review of the record, arguments of the parties, and pertinent authorities, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and TIMOTHY L. EASTER, J., joined.

Andrew E. Mills, Dickson, Tennessee, for the appellant, Whelchel Randall Hogan.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Ray Crouch, District Attorney General; and Margaret F. Sagi and Sarah W. Wojnarowski, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

***Facts and Procedural History***

The defendant, Whelchel Randall Hogan, was indicted in Dickson County for possession with intent to sell or deliver more than one-half ounce of marijuana, possession with intent to sell or deliver .5 grams or more of cocaine, and possession of drug paraphernalia. The defendant filed a motion to suppress the evidence seized from him at the time of his arrest, arguing the officers did not have reasonable suspicion to seize him and the search warrant issued was invalid and lacked probable cause. The evidence presented at the hearing included the testimony of Detective Chad Fussell and Agent Josh Ethridge. From the suppression hearing, the following facts emerged:

At approximately 7:30 p.m. on August 13, 2013, Detective Fussell was on patrol when he spotted a man walking toward a Marathon gas station. Detective Fussell recognized this man as Alvin Goss, a known associate of the defendant, who once lived at the mission house run by Detective Fussell's church before being kicked out for drug use. Mr. Goss was on his cell phone and appeared "very agitated." Detective Fussell watched as Mr. Goss entered the gas station and emerged a short time later, carrying a small orange box. He walked toward the Motel 6, an area known for drug activity, disappearing through a breezeway. Detective Fussell then entered the Marathon gas station and discovered Mr. Goss had purchased baking soda, a product commonly used to cut cocaine. When he returned to his vehicle, Detective Fussell noticed a Ford Thunderbird in the Motel 6 parking lot, sitting perpendicular to the rest of the vehicles. Detective Fussell ran the license plate on the vehicle and discovered it was registered to Vanessa Quilantan, the defendant's girlfriend. Detective Fussell then called Agent Ethridge with the 23rd Judicial Drug Task Force and apprised him of the situation. Agent Ethridge was off-duty at the time but agreed to meet Detective Fussell and set up surveillance in the motel parking lot.

Detective Fussell and Agent Ethridge parked their vehicles across the street from the Motel 6, at the Super 8 Motel. Detective Fussell and Agent Ethridge were talking to each other on the phone when they observed several white service trucks enter the Super 8 Motel parking lot. Detective Fussell and Agent Ethridge then observed the defendant walk across the Motel 6 parking lot, approach a man, and conduct a hand-to-hand transaction, "joining hands" for a moment. Detective Fussell and Agent Ethridge were both familiar with the defendant, having taken him into custody on prior occasions. The defendant then entered one of the white trucks from the passenger side, and a line of men formed at the driver's side of the truck. Detective Fussell and Agent Ethridge watched as one man after another sat in the truck for a few seconds before exiting. Although Detective Fussell and Agent Ethridge could not see any drugs at this point, they believed these encounters to be drug transactions based on their training and experience. Detective Fussell became uncomfortable with the situation due to the number of people surrounding his vehicle, so he and Agent Ethridge decided to approach the defendant. Agent Ethridge pulled his car next to Detective Fussell's, activating his blue emergency

lights. In addition, because Detective Fussell and Agent Ethridge were aware the defendant had a prior weapons conviction, they exited their vehicles with guns drawn at "a low ready," pointed toward the ground.

Detective Fussell approached the passenger side of the truck, where the defendant was exiting the vehicle, and identified himself as police. The defendant was holding a clear bag with "little squares" inside, which Detective Fussell believed to be drugs, and threw the bag under the white truck as Detective Fussell came toward him. Detective Fussell detained the defendant and placed him in a marked police car that had arrived as back-up. A pat-down of the defendant revealed money, cocaine, and a hotel room key; however, no weapons were found. Meanwhile, Agent Ethridge had approached the driver's side of the white truck, detaining the man sitting in the driver's seat, James Hodge, who had a small bag of marijuana on his person. None of the other men Detective Fussell and Agent Ethridge witnessed conducting transactions with the defendant were detained or questioned.

Agent Ethridge and Officer Barrow, who had arrived as backup, spoke with the night clerk at the Motel 6 to determine if the defendant had rented a room. They knocked on the defendant's motel room door, and Ms. Quilantan, the defendant's girlfriend, answered. As soon as Ms. Quilantan opened the door, Agent Ethridge could smell "the strong odor of burning or burnt marijuana." Agent Ethridge asked for consent to search the hotel room, but Ms. Quilantan said no. Agent Ethridge then told her to exit the room. He and Officer Barrow entered the motel room, looking under the bed and in the bathroom to ensure no one else was present. Following the protective sweep, Agent Ethridge applied for a search warrant, and upon execution of the warrant, officers discovered marijuana, cocaine, a grinder, and a scale.

Agent Ethridge acknowledged the affidavit in support of the search warrant did not include every event that happened that night, including that he and Detective Fussell drew their guns when approaching the defendant, he activated the blue emergency lights on his vehicle, or he conducted a protective sweep of the hotel room. However, he insisted these omissions were not intentional or meant to be misleading, and his basis for probable cause, the smell of marijuana emanating from the motel room, was the main focus of the affidavit.

The trial court denied the motion, finding:

1. The search warrant issued on August 13, 2013, was valid. The [c]ourt finds that looking at the four corners of the document there was probable cause contained in the affidavit to search the [m]otel [r]oom. There was probable cause based on Agent Ethridge and

Detective Fussell[']s encounter with the [d]efendant at the initial seizure and they had separate probable cause to search based on the smell of marijuana emanating from the [m]otel [r]oom when they conducted a knock-and-talk.

2.     Agent Ethridge and Detective Fussell had reasonable articulable suspicion when they initially seized the [d]efendant. The officers saw an individual who was a known drug associate of the [d]efendant near, they knew that the [d]efendant was a convicted drug felon, and they knew the [d]efendant was convicted of being a [f]elon in [p]ossession of [w]eapons. Further, they had just seen what they believed based on their knowledge and experience was a hand-to-hand drug transaction involving the [d]efendant and a person. Then, they watched the [d]efendant engage in what they believed were multiple hand-to-hand drug transactions while in a vehicle. The [c]ourt also finds there were exigent circumstances present at the time. The officers had to act when they did as multiple individuals were around the scene. Based on the reasonable articulable suspicion and exigent circumstances the officers would have been reckless if they had not proceeded with a seizure of the [d]efendant.

Shortly thereafter, the defendant entered a plea of guilty to possession with intent to sell or deliver .5 grams or more of cocaine. The remaining two counts were dismissed. The defendant certified one question of law pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure:

Whether the trial court correctly ruled following a suppression hearing that: (1) the search warrant had probable cause and was valid to search the motel room and (2) that the State had reasonable articulable suspicion for the initial seizure of the defendant.

### Analysis

On appeal, the defendant contends his initial seizure lacked reasonable suspicion and the affidavit submitted in support of the search warrant lacked probable cause. The State contends the police had reasonable suspicion for the initial seizure and the search warrant was supported by probable cause. Following our review of the record and applicable law, we affirm the judgment of the trial court.

When reviewing a trial court's ruling on a motion to suppress, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolutions of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Accordingly, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. Appellate courts conduct a de novo review of questions of law and the trial court's application of law to facts. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). As the prevailing party, the State is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23.

## I.     Reasonable Suspicion

The defendant contends Detective Fussell and Agent Ethridge lacked the requisite reasonable suspicion necessary to seize him. The State responds by arguing the totality of the circumstances provided reasonable suspicion to believe the defendant was engaged in criminal activity at the time he was seized. We agree with the State.

The Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee freedom from unreasonable searches and seizures. These guarantees exist to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528 (1967); *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997). A search and seizure conducted under a valid search warrant is presumptively reasonable, but a warrantless search is presumptively unreasonable and the evidence discovered is subject to suppression unless the State demonstrates the search or seizure was conducted pursuant to an exception to the warrant requirement. *State v. McCormick*, 494 S.W.3d 673, 678 (Tenn. 2016) (internal citations omitted). One such exception to the warrant requirement is an investigatory stop. *State v. Simpson*, 968 S.W.2d 776, 780 (Tenn. 1998). However, an investigatory stop must be based on reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). The State has the burden of demonstrating, by a preponderance of the evidence, that a warrantless search passed constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

Courts review the legality of a reasonable suspicion stop by looking at the totality of the circumstances from the perspective of a reasonable officer. *State v. Smith*, 484 S.W.3d 393, 402 (Tenn. 2016) (citing *State v. Day*, 263 S.W.3d 891, 903 (Tenn. 2008)). This requires a review of the record for "specific and articulable facts" demonstrating that the defendant engaged in criminal activity, or was about to engage in criminal activity.

*Id.* As with a stop backed by probable cause, the subjective state of mind of the officer is not relevant to analyzing a reasonable suspicion stop. *Smith*, 484 S.W.3d at 402 (*citing Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)). Further, "if the defendant attempts to suppress evidence collected during the challenged stop, the state is not limited in its opposing argument to the grounds ostensibly relied upon by the officer if the proof supports the stop on other grounds." *Smith*, 484 S.W.3d at 402 (citing *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)).

In this case, the evidence does not preponderate against the trial court's denial of the motion to suppress. Detective Fussell observed Alvin Goss, a known drug offender and associate of the defendant, enter a gas station near the Motel 6 and purchase baking soda, a substance used to cut cocaine. Detective Fussell also testified the Motel 6 and Super 8 Motel are areas known for drug activity. *See State v. Nicholson*, 188 S.W.3d 649, 661 (Tenn. 2006) ("[A] location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation.") (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Both Detective Fussell and Agent Ethridge had personal knowledge of the defendant's prior drug and weapons charges. *See State v. Lloyd Andra Webb*, No. E2009-02135-CCA-R3-CD, 2011 WL 486850, at *9 (Tenn. Crim. App. Feb. 11, 2011) (noting, while an officer's personal knowledge of a defendant's past criminal behavior is insufficient to justify reasonable suspicion, an officer's prior knowledge combined with other factors can provide reasonable suspicion to detain a defendant). In addition, Detective Fussell and Agent Ethridge observed the defendant engage in several transactions, which they believed to be hand-to-hand drug transactions based on their training and experience. *See State v. Lamar Tyrone Harris*, No. M2010-1912-CCA-R3-CD, 2011 WL 3303477, at *4 (Tenn. Crim. App. Aug. 2, 2011), *perm. app. denied* (Tenn. Nov. 15, 2011) (finding reasonable suspicion when an officer observed interactions resembling the hand-to-hand transactions he participated in as an undercover officer). As such, the record supports the trial court's finding that the officers had reasonable suspicion to justify seizing the defendant. The defendant is not entitled to relief on this issue.

## II. Probable Cause for Search Warrant

The defendant next argues the search warrant issued for his motel room was not valid or supported by probable cause. The defendant contends Agent Ethridge failed to include several material facts in the affidavit supporting the search warrant, including that the officers' guns were drawn when approaching the defendant, Agent Ethridge activated his blue lights, Ms. Quilantan denied consent to search the motel room, and Agent Ethridge swept the motel room after being denied consent. According to the defendant,

these omissions amount to a falsehood by omission. The State contends the search warrant was valid and supported by probable cause. We agree with the State.

Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which has been defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." *Id*. The magistrate is then tasked with reading this affidavit "in a commonsense and practical manner." *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009). A finding of probable cause made by an issuing magistrate is entitled to great deference. *State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) (citations omitted). Accordingly, the standard to be employed in reviewing the issuance of a search warrant is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993) (citation omitted).

Agent Ethridge testified he "smelled the strong odor of burning or burnt marijuana" when Ms. Quilantan opened the motel room door. Although he admitted he did not include the information about his weapon being drawn, the activation of his emergency lights, Ms. Quilantan's denial of consent, or the protective sweep of the motel room, he did not omit them "with the intention of misleading anyone." He stated he could not "document every millisecond" and used the probable cause he had as the basis of the affidavit. The trial court, while acknowledging Agent Ethridge should have included the protective sweep in the affidavit, held there was probable cause due to the smell of marijuana emanating from the motel room. The defendant's argument that the smell of burnt marijuana does not indicate criminal activity in progress is without merit. It would be impossible for Agent Ethridge to determine whether the marijuana in the room was currently being burned or recently burned simply from the odor, and there is nothing in the record to indicate Agent Ethridge intentionally or recklessly withheld what he considered to be material information. Although we agree with the trial court that Agent Ethridge should have included the protective sweep in the affidavit, a disclosure of this information would not negate the probable cause justifying the issuance of the search warrant. Thus, the defendant is not entitled to relief.

In addition, the defendant argues he is entitled to relief because the affidavit misstated the location where the transactions took place as the Motel 6, when Agent Ethridge's testimony revealed they occurred at the Super 8 Motel across the street. A false statement in an affidavit may be sufficient to invalidate a search warrant. *State v. Little*, 560 S.W.2d 403, 406 (Tenn. 1978). The Tennessee Supreme Court has identified

two circumstances that "authorize the impeachment of an affidavit sufficient on its face, (1) a false statement made with intent to deceive the [c]ourt . . . and (2) a false statement, essential to the establishment of probable cause, recklessly made." *Id.* at 407. "Recklessness may be established by showing that a statement was false when made and that affiant did not have reasonable grounds for believing it, at that time." *Id.* In order to invalidate a search warrant, the false statement must be "the only basis for probable cause set out in the affidavit." *State v. Tidmore*, 604 S.W.2d 879, 882 (Tenn. Crim. App. 1980). "Allegations of negligence or innocent mistakes are insufficient to invalidate the search warrant." *Yeomans*, 10 S.W.3d at 297 (Tenn. Crim. App. 1999) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). This court has held the same rationale of the *Little* test extends to material omissions in an affidavit. *Id.* "However, an affidavit omitting potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Id.* The defendant bears the burden of establishing the allegation of perjury or reckless disregard for the truth by a preponderance of the evidence. *Id.*

Upon our review of the record and the applicable law, it is clear that the misstatement regarding which motel the actions took occurred in was the result of negligence or an innocent mistake. Accordingly, the defendant is not entitled to relief on this issue. *See Franks v. Deleware*, 438 U.S. 154, 171 (1978).

### *Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____

J. ROSS DYER, JUDGE